UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sonu Sonu,<br><br>　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>Kristi Noem *et al.*,<br><br>　　　　　　　Defendant(s). | Case No. 5:26-cv-00589-MRA-SSC<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER [7]** |

　　　Before the Court is Petitioner's Motion for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 7.[1] Petitioner requests that the Court order his immediate release from custody or, in the alternative, require Respondents to provide a bond hearing within 7 days. *Id.* at 1. Petitioner further asks the Court to enjoin Respondents from transferring Petitioner outside the Court's jurisdiction. The Court ordered Respondents to file a response to the TRO Application no later than February 11, 2026, at 5:00 p.m. ECF 12. No opposition was filed. The Court read and considered the moving papers and deemed the matter appropriate

---

[1] The docket entry text for Petitioner's amended motion for a temporary restraining order incorrectly titles the filing as a motion to amend the petition. ECF 7.

for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

I.   BACKGROUND

Petitioner Sonu Sonu ("Petitioner") entered the United States without inspection on or about March 15, 2023. ECF 6 ("Pet.") ¶ 22–23. Petitioner was briefly detained by Customs and Border Patrol upon entry, but Petitioner was released on March 19, 2023. ECF 7 at 5. A Notice to Appear was issued to Petitioner the same day. Pet. ¶ 25. Petitioner filed an I-589 Application for Asylum and for Withholding of Removal on September 15, 2023. *Id.* ¶ 26. Petitioner's Master Hearing is scheduled for February 18, 2026. *Id.* ¶ 26. Petitioner has at all times "attempted to comply with all of the terms and conditions of his release, and to seek adjudication of his asylum application via the processes available to him." ECF 7 at 5. This includes "both scheduled, in-person interviews, and unscheduled verifications via smartphone check-ins." *Id.* at 7. Petitioner has no criminal history. Pet. ¶ 30.

Petitioner was arrested by Immigration and Customs Enforcement ("ICE") on November 8, 2025, while visiting an automobile repair shop. *Id.* ¶ 27. Petitioner complied with ICE officers' request to speak with him. *Id.* ¶ 28. The officers "could not identify [Petitioner's] case in their systems," and they proceeded to issue a new Notice to Appear, which alleged that Petitioner had arrived on or about the date of detention (*i.e.*, on or about November 8, 2025). *Id.* Petitioner has been in custody at the Adelanto Detention Facility since then. *Id.* ¶ 29.

Petitioner filed a petition for a writ of habeas corpus on January 30, 2026, in the Eastern District of California. ECF 1. Petitioner concurrently filed a Motion for a Temporary Restraining Order. ECF 2. Petitioner's filings provided conflicting allegations regarding the location of his detention. ECF 8 at 1. Petitioner filed an Amended Petition on February 3, 2026, representing that he is detained at the Adelanto Detention Facility in Adelanto, California. ECF 6. The matter was then transferred to the United States District

Court for the Central District of California pursuant to 28 U.S.C. § 1631 and assigned to the undersigned judge.

Petitioner's TRO Application seeks an order requiring Respondents Kristi Noem, Secretary of Department of Homeland Security; Pamela Bondi, United States Attorney General; Sergio Albarran, ICE Field Office Director; and the Warden of the Adelanto Detention Facility (collectively, "Respondents" or the "government") to immediately release him, or to otherwise provide him with a bond hearing within 7 days. ECF 7 at 1. Petitioner also asks the Court to enjoin Respondents from transferring Petitioner outside of the Court's jurisdiction. *Id.*

On February 10, 2026, the Court directed Respondents to file a response to Petitioner's TRO Application by February 11, 2026, at 5:00 p.m. and Petitioner to file an optional reply by February 13, 2026, at 12:00 p.m. ECF 12. As of today, Respondents have not filed any opposition.

## II.     LEGAL STANDARD

The same standard applies for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S.*

*Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *Cottrell*, 632 F.3d at 1132.

## III. DISCUSSION

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or at least has raised serious questions going to the merits of his procedural due process claim, and that the balance of hardships tips sharply in his favor.

### A. Likelihood of Success on the Merits

It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of [removal] proceedings."); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (same).

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), when determining what process is required before the government may impair a protected interest, the Court must weigh (1) the nature of the private interest at stake; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interests.

Civil immigration detention, which is "nonpunitive in purpose and effect," is justified only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. In releasing Petitioner after initially apprehending him upon his entry, the government necessarily determined that he was not a flight risk or danger. *See* 8 C.F.R § 1236.1(c)(8) (authorizing release of noncitizens under

§ 1226(a) if an officer determines that they "would not pose a danger to property or persons," and are "likely to appear for any future proceeding"); 8 C.F.R. § 212.5(b) (authorizing parole from custody of noncitizens deemed "neither a security risk nor a risk of absconding."); *see also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (explaining that "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."); *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *2 n.1 (E.D. Cal. July 11, 2025) (same); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *17 (E.D. Cal. Oct. 16, 2025) (same). Thus, to re-detain Petitioner following release, the government must present "evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk or is now subject to a final order of removal." *Saravia*, 280 F. Supp. 3d at 1176.

Here, having failed altogether to oppose the TRO Application, the government makes no showing whatsoever that Petitioner is a flight risk or danger to the community. According to his Petition and TRO Application, Petitioner has complied with all conditions of his release, including attending all scheduled and unscheduled check-ins, and has not committed any violation that would justify detention. Petitioner also has connections to his local community, including through his volunteer service at a temple, and provides care for a relative who suffers from paralysis. ECF 7 at 15. These facts further belie any suggestion that Petitioner is a flight risk or danger.

"Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025). Where an individual has not received a bond or redetermination hearing, "the risk of an erroneous deprivation [of liberty] is high." *Singh*, 2025 WL 1918679, at *7. Here, the risk of erroneous deprivation is high, because after Petitioner was determined not to be a flight risk or danger, he was re-detained by ICE without any opportunity to contest the basis for his re-detention. The government's wholesale failure to oppose the TRO Application leads

the Court to conclude that there is no countervailing interest in re-detaining Petitioner, let alone one that would justify detention without notice or any opportunity to contest the detention. "And detention for its own sake is not a legitimate governmental interest." *Salcedo Aceros*, 2025 WL 2637503, at *12 (citing *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025)). Moreover, custody hearings are "routine and impose a 'minimal' cost." *Singh v. Andrews*, 803 F. Supp. 1035, 1047–48 (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025)). "The government's interest is further diminished where a person "has consistently appeared for [his] immigration hearings ... and [ ] does not have a criminal record." *Id.* at 1048 (quoting *Pinchi*, 2025 WL 1853763, at *2).

Thus, based on the unopposed record before the Court, each *Mathews* factor favors Petitioner and demonstrates that he is likely to succeed on the merits or at least has demonstrated serious questions going to the merits of his procedural due process claim—that is, that he should have received process before he was detained. *Id*. ("'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'") (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985)) (other internal citations omitted).

### B. Irreparable Harm

Petitioner has also established irreparable harm. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)).

### C. Other *Winter* Factors

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding balance of hardships weighed in favor of

plaintiffs who credibly alleged that the government was violating the Immigration and Nationality Act). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

### D. Scope of Relief

"Injunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). In the underlying petition, Petitioner seeks his immediate release or, in the alternative, an individualized bond hearing. The TRO Application additionally seeks to enjoin Respondents from removing, transferring, or deporting him during the pendency of his removal proceedings. ECF 7 at 1.

For the reasons explained above, the Court is persuaded that a pre-deprivation hearing is warranted in this case given Petitioner's substantial liberty interests; the government's decision to re-detain Petitioner without notice or an opportunity to respond to any claim of changed circumstances requiring detention; and the government's failure to establish that Petitioner is a flight risk or danger. Numerous district courts, including this Court, have granted the same relief Petitioner seeks here. *See, e.g.*, *Garcia Mejia v. Noem*, No. 5:25-cv-03504-MRA-JDE, ECF 13 (C.D. Cal. Jan. 5, 2026); *Juarez Fernandez v. Semaia*, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 (C.D. Cal. Jan. 13, 2026)

(granting immediate release where noncitizen's parole was revoked without due process); *M.V.F.*, 2025 WL 369141, at *8 (same); *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321 (S.D. Cal. Dec. 23, 2025) (same).

Moreover, "[d]istrict courts in immigration habeas actions . . . retain the inherent equitable authority to restrict the transfer of petitioners during the pendency of the proceedings." *Quijada Cordoba v. Knight*, No. 1:25-CV-00605-BLW, 2025 WL 3228945, at *4 (D. Idaho Nov. 19, 2025) (citing *Oliveros v. Kaiser*, No. 25-CV07117-BLF, 2025 WL 2677125, at *8–9 (N.D. Cal. Sept. 18, 2025)). In light of the government's failure to oppose the TRO Application, the Court finds it appropriate to exercise that equitable authority here and enjoin Respondents from transferring Petitioner during the pendency of his habeas petition.

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

## IV. CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**. The Court **ORDERS** as follows:

1. Petitioner shall be **IMMEDIATELY RELEASED** from custody;
2. Respondents are **ENJOINED** from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring his re-detention and a timely hearing. At any such hearing, Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community;
3. Respondents are **ORDERED** to file reliable proof with this Court that Petitioner has been released by no later than February 18, 2026, at 5:00 p.m. Failure to do so may result in sanctions;

4. Respondents are **ENJOINED** from transferring Petitioner outside the Central District of California during the pendency of the habeas petition;

5. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. *See* L.R. 65-1. Respondents shall file any written response to the Order to Show Cause no later than **February 24, 2026**. **Failure to file a response will be deemed consent to the issuance of the preliminary injunction.** Upon receipt of Respondents' response, the Court may order Petitioner to file a reply if necessary. If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **February 24, 2026**. The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **February 17, 2026**, and expires at 4:30 p.m. on **March 3, 2026**. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: February 17, 2026

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE